COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-234-CV

ESTATE OF NOMA BISHOP IRVIN, DECEASED 

------------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In five issues, appellant David Irvin, executor of the estate of W. Ray Irvin, Jr.,
(footnote: 2) appeals the trial court’s denial of his additional claims, brought after our partial reversal and remand in 
Irvin v. Parker
, 139 S.W.3d 703 (Tex. App.—Fort Worth 2004, no pet.).  We affirm.

BACKGROUND

Noma died in May 1998, leaving Ray as her surviving spouse. 
 Irvin
, 139 S.W.3d at 705.  In December 1998, Loretta Parker (“Appellee”), Noma’s sister and estate administrator, filed a petition to recover property belonging to Noma’s estate.  
Id
.  The case was tried to a jury in February 2002.  
Id
. at 706.

The jury made four findings.  It found the amount of reimbursement owed by the estate to Appellant for property taxes on Noma’s separate property residence ($0) and for funeral expenses and grave monument ($1,277.20), and the amount of offset, i.e., the fair rental value attributable to Appellant’s occupancy, against Appellant’s reimbursement claim for the property taxes ($0).  It also found that an annuity was Noma’s separate property and that she did not knowingly consent to Appellant’s being the annuity’s owner on the date of its purchase.  Appellant appealed to this court on the annuity’s proper characterization.  
Id
.  We reversed the trial court’s judgment on that characterization and remanded for distribution of the annuity and its proceeds in June 2004.  
Id
. at 708, 712.  We affirmed the trial court’s judgment in all other respects and ordered Appellee to pay all costs of the appeal.  
Id
. at 712. 

On December 1, 2004, Appellant filed a “Memorandum of Issues Not Resolved,” seeking funeral expenses paid by Appellant, reimbursement for “C&C additional appella[te] costs” and attorney’s fees, and reimbursement credit “for being driven out of the [homestead].”  Appellant asserted that “[n]one of these issues were presented to the jury, nor could they have been.”  The cumulative value in Appellant’s sworn list of claims, filed December 3, 2004, which included not only the claims in his memorandum but also claims for his attorney’s fees from the jury trial and appeal, was $219,536.08. Appellee responded with a “Memorandum of Personal Representative,” on December 29, 2004, in which she rejected Appellant’s reimbursement claims for: “homestead claim for life estate”; prospective rent; funeral expenses; attorney’s fees; court reporter costs of $1,122.90; and “C&C additional appella[te] costs” of $389.98.
(footnote: 3)  Appellee allowed the court reporter costs of $5,520.00, county clerk costs of $1,778.00, and the tombstone cost of $1,227.20.

In May 2005, Appellee filed an “Account For Final Settlement” in the probate court in which she allowed Appellant’s court reporter costs of $5,520.00, his county clerk costs of $1,778.00, and the tombstone cost of $1,227.20, but rejected his other eight claims now at issue here.  Appellant filed a motion in June 2005,
(footnote: 4) requesting an evidentiary hearing on the denied claims.  In response to Appellant’s motion, Appellee argued that these claims were barred by res judicata and by section 313 of the probate code because Appellant failed to file suit within ninety days after Appellee rejected the claims.  
See
 
Tex. Prob. Code Ann. 
§ 313 (Vernon 2003).

The trial court heard these issues in December 2005, as well as Appellant’s motions for correction of inventory and appraisal, to deny approval of final accounting, and for a hearing on unresolved issues.  At the hearing, the following items were submitted by Appellant and admitted into evidence: volume eight of the trial record, a July 30, 1998 letter from Appellee’s attorney to Appellant requesting his cooperation in settling the estate, the bill of costs from this court, Appellant’s “C&C additional appella[te] costs” (i.e., postage, photocopies, and library usage), the receipt for Noma’s funeral expenses, and Appellant’s attorney’s fees.  The trial court awarded Appellant one-half of the proceeds of a certificate of deposit and one-half of the annuity proceeds addressed in our previous opinion; it denied the remainder of his motions.

At Appellant’s request, the trial court entered findings of fact and conclusions of law.  It made the following fact findings:

(1) [Appellant] failed to request an issue on his “homestead claim for life estate to Southwest Parkway in the amount of $78,000.00" in the jury trial in this cause (which was appealed to the Court of Appeals under Cause No. 2-02-258-CV).

(2) [Appellant] failed to request an issue on his “prospective claim $1,000.00 per month rental value in the amount of $85,000.00" in the jury trial of this cause.

(3) [Appellant] requested an issue as to “the community estate of [Appellant] used to pay for funeral expenses of Noma Bishop Irvin and the purchase of a monument for her grave site” and the jury answered “$1,227.20.”

(4) [Appellant] failed to request an issue on attorney’s fees in the jury trial of this cause.

In findings (5) through (12), the trial court also found that on December 3, 2004 Appellant filed eight separate claims against the estate with Appellee after the jury trial and appeal; that each of the claims was rejected by Appellee on December 29, 2004; and that Appellant did not bring suit within ninety days of the date of the rejection of the following claims: (5) “a homestead claim for life estate in Southwest Parkway residence in the amount of $78,000.00,” (6) “a homestead claim for prospective claim in the Southwest Parkway residence in the amount of $85,000.00,” (7) “C & C additional appella[te] costs of $398.98,”
(footnote: 5) (8) funeral expenses of $7,056.00, (9) attorney’s fees of $21,427.00, (10) attorney’s fees of $5,000.00, (11) attorney’s fees of $5,000.00, and (12) court reporter costs of $1,122.90.  The trial court stated in its conclusions of law that each of Appellant’s eight claims was barred by res judicata and section 313 of the probate code.

BARRED CLAIMS

Appellant’s five overlapping issues amount to the general argument that the eight denied claims were not barred as a matter of law by section 313 of the probate code or res judicata, and that some of the trial court’s fact findings supporting these conclusions were contrary to the evidence or had insufficient evidence to support them.

Standard Of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury’s answers to jury questions.  
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).  Findings of fact, although not required, can properly be considered by the appellate court in an appeal from any judgment based in any part on an evidentiary hearing.  
See IKB Indus. (Nigeria) v. Pro-Line Corp.
, 938 S.W.2d 440, 443 (Tex. 1997); 
Int’l Union v. General Motors Corp.
, 104 S.W.3d 126, 128-29 (Tex. App.—Fort Worth 2003, no pet.).  The trial court’s findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury’s answer.  
Ortiz v. Jones
, 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel
, 881 S.W.2d 295, 297 (Tex. 1994).

A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998), 
cert. denied
, 526 U.S. 1040 (1999); Robert W. Calvert, 
“No Evidence” and “Insufficient Evidence” Points of Error
, 38 
Tex. L. Rev
. 361, 362-63 (1960).  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.  
City of Keller v. Wilson
, 168 S.W.3d 802, 827 (Tex. 2005).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. 
Citizens Nat’l Bank v. City of Rhome
, 201 S.W.3d 254, 256 (Tex. App.—Fort Worth 2006, no pet.); 
Dominey v. Unknown Heirs and Legal Representatives of Lokomski
, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).  The trial court’s conclusions of law are reviewable de novo as questions of law, and will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.  
Hawkins v. Ehler
, 100 S.W.3d 534, 539 (Tex. App.—Fort Worth 2003, no pet.).

Homestead Fact Finding

Appellant complains in his second issue about the sufficiency of the evidence to support the trial court’s fact finding on his request for a homestead issue at the jury trial.  He argues that his request for a homestead issue was denied at the jury trial, referring to the requested issue as “[a]n issue to this effect,” and that therefore, the trial court’s first finding of fact was contrary to the evidence in the jury trial.
(footnote: 6)  
The trial court found that “[Appellant] failed to request an issue on his ‘homestead claim for life estate to Southwest Parkway in the amount of $78,000.00’ in the jury trial of this cause.”  The issue that Appellant did request at trial proposed that the jury

[f]ind from clear and convincing evidence the amount of the reimbursement claim or offset, if any, proved in favor of [Appellant], and state your answer, if any, in dollars: The fair market rental value of the residence on Southwest Parkway following its surrender by [Appellant] to the Estate.

A plain reading shows that the requested issue is similar to, but not the same as, what Appellant now argues.  Specifically, the proposed jury issue requested that the jury name an amount for the fair rental value of the residence after Appellant decamped; it does not request the specific amount of $78,000.00, nor does it mention “homestead claim” or “life estate.”
(footnote: 7)  Because of these differences, we conclude that there was legally sufficient evidence upon which the trial court could base its finding that Appellant failed to request an issue on his “homestead claim for life estate . . . in the amount of $78,000.00" in the jury trial.  
See City of Keller
, 168 S.W.3d at 827.  Having reviewed all of the evidence presented at the hearing, we also conclude that it was factually sufficient to support the fact finding because the evidence supporting it is not so weak that the answer should be set aside and a new hearing ordered.  
See Garza
, 395 S.W.2d at 823.  We overrule Appellant’s second issue.

Appellant's Claims

Appellant argues in the first point of his first issue that the nature of a probate case is that it can involve multiple claims brought at various times, so  his claims should not have been denied.  In the second point of his first issue, tied to issues three and five, he contends that he complied with section 313 of the probate code.  And in the fourth point of his first issue, tied to issue four, he complains that his claims were not barred by res judicata.

Multiple Claims

Appellant asserts that a probate case can involve multiple rulings of the court or separate trials that present final appealable orders.
(footnote: 8)  He cites 
Roach v. Rowley
, 135 S.W.3d 845 (Tex. App.—Houston [1st Dist.] 2004, no pet.), in which 
the court held that several separate applications for fees and expenses by the temporary administrator were each final and appealable orders.  
Id. 
at 848.

Roach
’s pertinent issue 
was whether the devisee had waived his objections to the nine fee orders filed, approved, and paid between November 2001 and October 2002.  
Roach
, 135 S.W.3d at 846-48.  The devisee’s only objections pertained to the fees, and he did not file any objections to them until December 2002, after the final accounting was filed.  
Id
. at 846.  The court held that he had waived those objections because each of those orders was final and appealable.  
Id
. at 846, 848.  The court’s reasoning was based on the orders’ contents, which involved a final adjudication of substantial rights and the absence of any interlocutory language, and precedent that stated that a probate order awarding attorney’s fees was final for purposes of appeal because, as estate administration was an ongoing process, it would be unfair to defer appellate review of the order until the estate was closed.  
Id
. at 848. Appellant appears to be arguing that because the fee claims in 
Roach
 were filed at different times during the administration of the estate and were final and appealable after each payment, then his additional claims, brought after the jury trial and his appeal to this court, are somehow not precluded.
(footnote: 9)  If this is the case, we disagree.
(footnote: 10)
 The nature and timing of the claims in 
Roach
 and those brought by Appellant are fundamentally different.  The 
Roach 
orders
 pertained to payment of accounts incurred 
through 
estate administration; the devisee appealed after the trial court signed the order that both denied his objection and approved the amended final accounting, closing the estate.  
Id
. at 846.  There had been no trial on any matter involving that estate and no objection except with regard to payment of fees involved in administering it.  
Id
.  Here, in contrast, Appellant seeks reimbursement for expenses incurred before the jury trial, such as funeral expenses, as well as expenses incurred during his appeal and claims for prospective relief, and none of these are directly tied to the administration of Noma’s estate, which Appellee conducted.  The 
Roach
 court specifically cited to precedent that held that, with regard to payment of attorney’s fees incurred in estate administration, a probate order awarding those fees was final for purposes of appeal.  
Id
. at 848; 
see Wittner v. Scanlan
, 959 S.W.2d 640, 642 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  No attorney’s fees incurred in the administration of Noma’s estate are at issue here.  Because we conclude that 
Roach
 is inapposite, and Appellant cites us to no other case law pertaining to multiple claims brought at different times, we overrule his first point in his first issue.

Section 313 Of The Probate Code

In his fifth issue and his second point under his first issue, Appellant complains that the trial court erred by concluding that his eight claims were barred by section 313 of the probate code and contends that he complied with section 313.  
See
 
Tex. Prob. Code Ann
. § 313.  In his third issue, he asserts that there was insufficient evidence to support the trial court’s fact findings that he did not bring a suit within ninety days of the rejection of his claims by Appellee.

Section 313 provides that when a claim has been rejected by the estate’s personal representative, “the claimant shall institute suit thereon . . . within ninety days after such rejection, or the claim shall be barred.”  
Id
.; 
see Russell v. Dobbs
, 163 Tex. 282, 354 S.W.2d 373, 376 (Tex. 1962).  This statute’s purpose is to bring about an early disposition of claims against estates.  
See Russell
, 354 S.W.2d at 376.  The presentation of a claim to the representative is the first step in the procedure established for obtaining a judgment which can be enforced in the probate proceedings, and as a general rule the creditor must comply with all statutory requirements.  
Id
.

It is not disputed that Appellant presented his claims to Appellee, or that she rejected them.  Appellant filed his “Memorandum of Issues Not Resolved” and list of authenticated claims in early December 2004, and Appellee rejected them on December 29, 2004 in her “Memorandum of Personal Representative.” Whether Appellant complied with section 313 depends on the construction of the phrase “institute suit” as it pertains to his memorandum and list of claims, which he argues met section 313’s requirements.  The probate code does not define the phrase “institute suit.”  Appellant cites us to 
In re Estate of Ayala
, 
19 S.W.3d 477, 479 (Tex. App.—Corpus Christi 2000, pet. denied), to support his argument for a loose interpretation of the timing required under section 313.  In 
Ayala
, creditor IBC filed a claim and a “motion to require sale of property” with the court in December 1997, which the estate’s personal representative never expressly allowed or rejected.  
Id. 
at 478.  Generally, a claimant is charged with the knowledge that a claim will be deemed rejected by operation of law if no action is taken by the representative within thirty days.  
See Russell
, 354 S.W.2d at 376 (stating that the statutes contemplate that a creditor will keep himself informed as to the status of his claim and take the steps required by law to reduce the same to judgment).  But in 
Ayala
, between January and April 1998, the trial court erroneously allowed the claim and then set aside its order granting it; IBC filed an amended motion for sale in June, which the trial court denied and dismissed, and which was subsequently appealed.  19 S.W.3d at 478.  Because IBC’s first motion to require sale, filed on the same day that it filed its claim, set out the claim, the facts supporting it, and requested relief, the 
Ayala
 court concluded that the substance of IBC’s motion, construed liberally, could constitute a “suit” under section 313.  
Id
. at 479.  It also held that section 313 had no provision barring a claim filed prematurely and, analogizing to premature motions for new trial and notices of appeal, which are considered filed on the date of, but subsequent to, the signing of the judgment, it rejected the argument that the claim was barred for premature filing.  
Id
. at 479-80.  However, the 
Ayala 
court did not address what effect rejection would have had on the claim, since the personal representative never expressly rejected or accepted it, and the 
Ayala 
court only reversed and remanded the order that had denied and dismissed IBC’s claim.  
Id
. at 480.  Appellant’s December 2004 memorandum stated that “the following matters are before the court”:

(1) The funeral expenses, which were paid by [Appellant], is a statutory priority claim and the estate is required by statute to pay such expenses out of . . . Noma Irvin’s part of the community property.

(2) The estate agreed that [Appellant] is entitled to be reimbursed appella[te] costs in the amount of $7243.00, but not expenses paid by [Appellant] in the amount of $5,398.00, which include postage, filing fees, and appella[te] attorney[‘s] fees.  This is an issue which the court should consider and then make a ruling.

(3) [Appellant] is entitled a reimbursement credit for being driven out of the house.  Jim Chandler [Appellee’s witness at trial] testified that at the time of Noma’s death, the rental value for Southwest Parkway was a $1,000.00 per month, and [Appellant] has now lived six years and seven months since the death of Noma, and has a life expectancy of seven point one years.

Appellant also requested an evidentiary hearing, “to show the court how much of [Appellant’s] attorney[‘s] fees should be awarded from the probate funds,” and prayed that the court order Appellee “to return the funds to the estate, withdraw her Lis Pendens notice, pay the debts of the estate, make a fair accounting to [Appellant], deal with the trust and perform the rest of her duties in a fair and responsible manner.”

Appellant’s other December 2004 filing also contained these claims, listing his “reimbursement credit” above as “homestead claim for life estate” of $78,000 and “prospective claim” for monthly rental value of $85,000, $5,000 for appellate attorney’s fees, “C&C additional appella[te] costs” of $389.98, and $8,283.20 for combined funeral expenses and tombstone costs.  It also contained the rest of his claims at issue here and their dollar values, and concluded with, “Claimant requests that the above claims be allowed, approved, and fixed as a variety of types of debts against the assets of the estate securing the indebtedness and paid according to the types of obligations which each claim is.”

In contrast to 
Ayala
, in which the creditor requested the sale of the deceased’s condominium to satisfy the deceased’s purchase-money debt that the condominium secured at the same time that it filed its claim against the estate, here, Appellant filed overlapping lists, one an incomplete listing, and requested payment from the estate’s assets without specifying which, if any, assets secured each claim.  
See Ayala
, 19 S.W.3d at 478.  Also unlike 
Ayala
, Appellant’s lists were not filed together, and there was no erroneous allowing of the claims by the trial court; Appellee clearly rejected them. 
 See id
.  Although section 313 may have no provision barring a prematurely filed suit, Appellant’s filings, lacking 
all
 of the characteristics that the 
Ayala
 court found relevant to its holding, such as the motion to require sale filed on the same day as its claim against the estate, the facts supporting its secured purchase-money claim, and its specific request for relief through the sale of the debt-secured property, do not constitute a “suit” under section 313
.  Cf. id. 
at 479.  When we add to this the additional inconsistency of Appellant’s filing on June 9, 2005, of a “Motion to Protest Denial of Certain Claims,” seeking an evidentiary hearing on all of the claims denied by Appellee, we conclude that the trial court did not err by ruling Appellant’s claims were barred by section 313.  Because Appellant failed to bring suit on any of the claims rejected by Appellee
(footnote: 11) within the ninety-day period, they were barred by section 313.  
See
 
Tex. Prob. Code Ann
. § 313.  We overrule Appellant’s fifth issue and his second point under his first issue.  We also overrule his third issue, because, based on these facts, the trial court had both legally and factually sufficient evidence to generate its fact findings on timing.  
See City of Keller
, 168 S.W.3d at 827; 
Garza
, 395 S.W.2d at 823.  Because of our disposition on these issues, we need not address Appellant’s remaining issues with regard to res judicata.  
See
 
Tex. R. App. P. 
47.1
.

CONCLUSION

Having overruled all of Appellant’s issues, we affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL B:  CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DELIVERED:
  May 17, 2007

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
David became Ray’s successor-in-interest in Noma’s estate at Ray’s death.  Except where inappropriate, we refer collectively to David and Ray as “Appellant.”

3:
Appellant submitted a claim for “C & C additional appella[te] costs of $389.98,” and, at the evidentiary hearing, entered into the record an account of these costs.  “C&C” apparently refers to costs incurred by the law firm representing Appellant, Crampton & Crampton.  Appellant’s attorney informed the trial court that these “costs” were charges for Federal Express, law library use for research, and Kinko’s copying, among other charges.  Appellant mischaracterized “costs” here as what are really additional attorney’s fees.  
See Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.
, 739 S.W.2d 622, 626-27 (Tex. App.—Dallas 1987, writ denied) (stating that expenses such as photocopies and postage make up the overhead of a law practice and fall under the category of attorney’s fees because they are considered in setting hourly billing rates). 
 Because these “additional appella[te] costs” were actually attorney’s fees, they were not recoverable as costs under our 
June 17, 2004 
judgment.

4:
The motion was entitled, “MOTION TO PROTEST DENIAL OF CERTAIN CLAIMS, MOTION TO OFFSET A PORTION OF SUCH CLAIMS AGAINST PROPERTY IN WHICH [APPELLANT] HAS AN INTEREST, MOTION FOR REIMBURSEMENT AND FOR PAYMENT, MOTION TO TRANSFER TITLE ON SEPARATE PROPERTY, MOTION FOR FINAL ACCOUNTING AND DISTRIBUTION.”

5:
We note that Appellant sought $389.98 and that is amount that Appellee rejected, whereas the trial court’s findings recite the amount claimed by Appellant as $398.98.

6:
Appellant requested at the hearing that the trial court take judicial notice “of all pleadings filed in this cause and all proceedings had herein.”  The court granted Appellant’s request.

7:
The proposed jury issue is closer to Appellant’s post-trial prospective claim for rent, but Appellant does not argue this.  He also appears to argue that the trial court made an incorrect fact finding because he filed his homestead claims post-jury trial; however, filing the claim 
after
 the jury trial would not render incorrect a finding that Appellant did not request the issue 
in
 the jury trial.

Even assuming that Appellant did request the same issue at trial, the trial court would not have erred by not submitting it to the jury.  Appellant admits in his brief that the issue of Appellant’s lost “life estate” was not in either party’s trial pleadings.  A party is not entitled to the submission to the jury of any question not raised by that party’s affirmative written pleading.  
See
 
Tex. R. Civ. P. 
278.  The portion of the trial testimony submitted by Appellant at the hearing is Appellee’s witness’s testimony with regard to the residence’s fair rental value, 1968-1998, presented to demonstrate an offset to the estate with regard to Appellant’s reimbursement claim for taxes and other property expenses.  Appellant cross-examined the expert, but only with regard to a different piece of property.  Rule 278 provides that the court shall submit questions to the jury which are raised by the written pleadings and the evidence.  
Id
.  Neither Appellant’s written pleadings nor the evidence at trial provided any basis for the complained-of homestead issue.

In issue one, points three and six, Appellant argues that he was not required to request jury issues on matters not within the parties’ pleadings and that he was entitled to continue to live in the separate property homestead. However, he has provided no reason why his homestead-related claims should not have been pled in his counter-petition, only that they were not.  And even assuming that Appellant had stated a valid cause of action for a “homestead claim for life estate,” it would have been barred by res judicata.  
See Laster v. First Huntsville Props.
, 826 S.W.2d 125, 129 (Tex. 1991) (stating that while a homestead right is analogous to a life estate, it is not identical because one’s homestead rights can be lost through abandonment); 
Steger v. Muenster Drilling Co.
, 134 S.W.3d 359, 368 (Tex. App.—Fort Worth 2003, pet. denied) (stating that res judicata requires proof of a prior final judgment on the merits by a court of competent jurisdiction, identity of parties, and a second action based on the same claims as were raised 
or could have been raised 
in the first action based on subject matter). 

8:
This much is accurate.  Although appeals generally may be taken only from final judgments, probate proceedings are an exception to the “one final judgment” rule.  
De Ayala v. Mackie
, 193 S.W.3d 575, 578 (Tex. 2006). Multiple judgments, final for purposes of appeal, can be rendered on certain discrete issues in probate cases, based on the need to review controlling, intermediate decisions before an error can harm later phases of the proceeding.  
Id.
; 
Lehmann v. Har-Con Corp
., 39 S.W.3d 191, 192, 195 (Tex. 2001). 

9:
However, this is unclear to us because Appellant does not explain how 
Roach
 applies to his facts.

10:
If not, then we overrule Appellant’s first point of his first issue under rule 38.1(h).  
Tex. R. App. P. 
38.1(h) (requiring an appellant’s brief to contain a clear and concise argument for the contentions made with appropriate citations to authorities and the record); 
see Tex. Mexican Ry. Co. v. Bouchet
, 963 S.W.2d 52, 54 (Tex. 1998) (stating that an issue is sufficient if it directs the appellate court to the error about which complaint is made). 

11:
With regard to the funeral expenses in his fifth point to his first issue, Appellant paid these and was entitled to claim reimbursement from Appellee. 
See
 
Tex. Prob. Code Ann. 
§§ 320-320A.  He did so in the first trial, and the trial court entered judgment on the jury’s verdict on Appellant’s behalf with regard to his reimbursement claim for funeral expenses and monument expense in the sum of $1,227.20, and ordered the estate to pay it.  Therefore, even if Appellant had met section 313's requirements, res judicata would have barred this claim.  
See Barr v. Resolution Trust Corp.
, 837 S.W.2d 627, 628-29 (Tex. 1992) (stating that res judicata, in its issue preclusion sense, prevents relitigation of particular issues already resolved in a prior suit).

The same reasoning would have also applied to his claims for attorney’s fees and court reporter costs.  
See id.
  In the first trial, Appellant asserted in his counterclaim that he was entitled “to receive all reasonable and necessary attorney’s fees and costs incurred in the defense and appeal of this action.” Appellant does not claim that he raised attorney’s fees and costs as a potential jury issue or that such an issue was denied.  Because he pled it, however, he could have requested it as long as he could demonstrate that he was so entitled.  
See
 
Tex. R. Civ. P
. 278.  The trial court’s judgment concluded with the statement, “All relief not expressly granted herein is DENIED,” thereby denying Appellant’s request in his pleadings for jury trial attorney’s fees and costs and for appellate attorney’s fees.